Council, the first case today is number 181884, AER Advisors Inc. v. Fidelity Brokerage Svcs., LLC Thank you Thank you Good morning, and may it please the court. I represent AER Advisors, Peter Deutch and Bill Deutch. I'm David Graff from the firm Graff Silverstein. Congress has granted a broad immunity to financial institutions from liability for filing suspicious activity reports, but that immunity is in no way without limitation. The text of the statute reads, any financial institution that makes a voluntary disclosure of any possible violation of law or regulation to a governmental agency shall not be liable. Now, nowhere in that statute are you going to find language that grants absolute or unconditional immunity. Rather, there's an express qualification. It says expressly that there needs to be a possible violation of law that's reported. Now, that means that by an objective test, there needs to be determined whether or not the violation of law that's reported by the financial institution is possible. If it turns out that it is objectively impossible, then no immunity can attach. Now, fidelity basically urges that the reporting institution only needs to convey a violation of law, but not a possible violation of law. Meaning that in the event that the report states that a short squeeze was caused by someone when in fact it had previously been caused in the same market at the same time, that somehow that report would be given immunity. But it's not. And to put it perhaps a bit more simply, the report can't basically say that you robbed an empty store because there's nothing to rob. The robbery would be impossible. But that is not what the report apparently says. If we are to accept the evidence of these notes that the whole thing is based on, you couldn't tell from at least the notations that the store was already empty. All you would tell or be able to infer from that, as I understand it, is that something was suspicious. And it ought to be looked at for the possibility of a violation. And why should the statute require anything more than that? Well, the statute itself, the word possible, requires that there be a review, just like there was in Stout, after full discovery, and a determination as to whether or not that which was written in the report, the violation that was reported, is in fact possible. In our case, for instance, if you look at the complaint and the pleadings and take them as true, as I think we must at this point, on March 5th, we instructed Fidelity not to loan our shares. Fidelity did in fact loan our shares in May. They recalled them at the beginning of June. The recalls failed, and then subsequently there was a short squeeze in the marketplace of China Medical. Then, in July, they wrote a report to the federal government accusing us of causing that same short squeeze. So, in the pleadings before you, what you have is a situation where, quite literally, the action that was attributed to our clients was in fact impossible. And not only was it impossible, objectively, but it was known to be impossible by the drafter of the report. Well, let me ask you to step back and deal with this question. The report, whatever it was, is not in evidence, and under the statute, as I understand it, never can be. So how is a court supposed to know what the report said? Well, Your Honor, let me respond to that in two ways. First of all, Exhibit B, the complaint that was filed with the district court, and that is in the appendix accompanying here, there is a draft report of a SAR that was sent to a SAR department in Fidelity. And then after that report was sent, there was an investigation by the SEC against our clients. I have no doubt that you've got a circumstantial case that some kind of a report was filed. But to my knowledge, you do not have an evidentiary basis to say that the report that was filed was disclosed or revealed by the draft. Maybe it was changed. Well, Your Honor, what I can say to you is that may be the case. We don't think it is the case. However, if you look at this court's determination and decision in Stout, there was, in fact, at some point, some way, a disclosure of the SAR. It's stated directly in the case in Stout that Stout, after the pleading stage, was some way, somehow, granted access to the SAR. There was a discovery process. And during that discovery process, it was determined that, in fact, there was a possible violation of law at summary judgment. And we're looking for that same opportunity that was presented in Stout. Now, I would respectfully suggest that it's for the district court to make a determination about how best to address the SAR and disclosure of the SAR. Now, perhaps the easiest way to do it, and this is just a suggestion and in no way takes away from the fact that our position is there's a myriad of different ways to deal with that issue. But one way would be for the judge, the district court judge, to review the SAR, the actual SAR in camera, which it certainly has the power to do, and make a determination right there whether or not that SAR, in fact, has been changed. And if it hasn't been changed, in which case our position is actually 100% correct and it wasn't possible, then we should be able to proceed under the standard. Do you know if the SEC has investigated Fidelity? I'm not aware of how the SEC has exercised its resources. But what I do know is that irrespective of whether the SEC is going to investigate Fidelity or the government is going to investigate Fidelity, the statutory language that we have here requires that we're given an opportunity to bring a case in the event that the violation of law is impossible. And the pleadings in this case make exceedingly clear, as I described, that the violation of law that Fidelity attributed to my clients was not only impossible, but constituted a fraud on the government and constituted their attempt to cover up from their own wrongful conduct and state guard our clients for doing so. Counsel, how do you see the word possible as a meaningful limitation? I mean, I struggle to understand what standard we could apply in evaluating the possibility. It seems pretty clear from the legislative history that the word possible was inserted to emphasize how expansive the immunity is. I think your case might be a stronger one if the statute just said a violation of law. Then the argument could be made that there has to be some standard incorporated by which the reporting entity had to make a judgment about whether there was or was not a violation of law. But by inserting the word possibility, it seems to expand the protection afforded to a reporting agency. So what standard would you apply for courts in assessing that possibility? Well, your honor, it's a good question because if you look to the language in Stout, in the paragraph starting conceivably that was cited by the lower court, the end sentence says, here, whatever its internal beliefs, the bank did not by any objective test identify, I'm sorry, the bank did by any objective test identify a possible violation. So in Stout, actually what they did interestingly is they didn't articulate a particularized standard because they indicated that by any standard, there was an objective standard, there was a violation met, and they didn't reach that thought. So at some point, somebody is going to have to determine what that objective standard would be. And if you're asking me what the objective standard should be, I think it would probably be, and it's a good question, would a reasonable person reviewing all the facts and circumstances available to them make a determination that in fact there was a possible violation of law? Counsel, that seems, I guess on a policy level, that really does eviscerate the immunity. You just referred to the facts and circumstances known to a reasonable person. Those facts and circumstances could only be developed through an extensive discovery process. Your honor. And then disposed of perhaps on solid judgment. So that's what's seen. That's exactly the kind of burden that the immunity afforded by the statute was designed to avoid. Your honor, that's exactly right. And that's why the position that SIFMA takes, for instance, that this would open up the floodgates of litigation, does not work. This case comes on the heels of an extensive arbitration where there was in fact extensive discovery where we were able to determine what the facts and circumstances were surrounding the SAR and what the draft SAR itself stated. So, the circumstances under which this immunity, this immunity, this exemption to the immunity, this synchronic recondition to the immunity, would in fact be exercised, would require particularized plausible knowledge of the facts and circumstances surrounding the immunity. It would require particularized plausible knowledge of what the SAR likely was to have said. And it would require a committee such as ours that was able to articulate day by day, month by month, how it was absolutely impossible for that which was stated in the SAR to occur. And that's the scope of the immunity that we're looking for. And your honor, just to go back if I might to the, and I'm going to try to reserve two minutes here, I was going to do three. But, just to go back to the question about the word possible. We believe that the word possible is a modifying word. We believe that it requires the financial institution, when pressed as we have, to demonstrate that there was in fact a possibility, objectively. As Starr said, it says, the bank by any objective test identified a possible violation. But doesn't an objective test leave open the question whether by an objective test you mean something which as you see it, will in fact be confirmed or is it an objective test which looks to a broad range of possibilities, some of which may in fact not be shown, but which therefore gives a more expansive immunity. It can be objective and still be in either a restrictive or as Judge Lopez said earlier, a permissive scope. Well, you're right. The scope of the ultimate test about what in fact is going to be the precondition to this immunity is something that needs to ultimately, I guess, be litigated and determined in the courts. But, there is in fact a precondition to this immunity. And Stout said no different. Because there needs to be an objective test to identify a possible violation. There needs to be an undertaking whereby a court makes a determination whether or not there's objectively a possible violation stated in the SAR. And to do that just like you did in Stout, Your Honor, you would in fact need to have some sort, first of all, a pleading of plausible detailed allegations that demonstrate it. Then, you would need to have some mechanism, you're right, to confirm what the SAR says, like an interim review or something of that nature. And then, yes, just like it was in Stout where Stout was able to make a determination that there was a SAR. And then, you would need to make a determination as to whether or not that SAR was objectively possible or impossible. Mr. Counsel, Stout at least clearly stands for the proposition that there's no good faith requirement in the statute. And you're not arguing for a good faith requirement, is that correct? That's correct, Your Honor. You're urging that this, looking at the objective, objectively, the language, since objectively there was a possible violation, you're urging us to focus on that language and import that requirement into the statute? Yes, Your Honor, that's exactly what I'm looking to do. And if I, may I finish? You may finish answering the question. Okay. Your Honor, exactly what we're looking to do is not to try to revisit Stout in the sense that Stout rejected the Eleventh Circuit and that Stout rejected the good faith requirement that the Eleventh Circuit imported. What we're looking to do is come up with a very limited, a remarkably limited scope precondition, SIN 0.9, to this particular immunity, which pivots off of the word possible, which was put into the statute for a meaning and a reason. The Supreme Court, as we noted in our brief in the case of Duncan and drawn all the way back to the 19th century, indicates that every word of the statute needs to be given some sort of meaning, an authoritative meaning by the courts in interpreting it. And Congress made possible, as Stout says, to determine whether or not there, by any objective test, was a possible violation. And the objective test that should be applied in that regard is something that should be determined by the lower court in this matter, to the extent it needs to be determined or articulated by this court. But in no way does this statute stand for the proposition that there should be unconditional and absolute immunity, and particularly, by the way, in a case such as ours where we've pled plausible, particularized allegations, and particularly in a case such as ours where we believe that the allegations demonstrate not only impossibility, but the fact that there was a fraudulent cover-up to scapegoat our clients, and we don't believe that type of activity should be immunized as either. Thank you, Counselor. Thank you. Good morning, Your Honors. May it please the Court, my name is Chris Pace, and I represent Fidelity Brokerage Services. Good morning. Let me begin with a passage from this Court's decision in Stout, upon which my colleagues so focused, and why it's being misread. The passage, as you'll recall, is that it begins with conceivably. It says, Stout could argue that the report was not one of a possible violation, even though so termed and colorably disclosing a possible crime, if the bank knew that there was in reality no violation. It's exactly what they're saying here. They're saying, could argue that the bank knew there was no violation, even though it said in the report that there was a violation. But this is a non-mineral reading of the statute, which speaks of any possible violation. And then the Court goes on to say, it's an issue of scope and whether good faith applies, and then says, here, whatever its internal beliefs, the bank did by any objective test, identify a possible violation. So again, the issue is not, it's what's identified in the report that's filed that the Court focused on. Not whether it occurred. In fact, the Court expressly acknowledged it may not have occurred. Let's assume that the bank knew that there was in reality no violation. But as long as the report discloses a possible violation, rightly or wrongly, then the immunity applies. Essentially, it's distinguishing. But if the bank knows that there's a possible violation, but they also further know that they caused the violation, How do you respond to that as being a reasonable interpretation of the statute? Well, for two reasons, Your Honor. First is, of course, the statute requires reporting of a violation and actually not who caused the violation. So in all honesty and all candor from that statement, you would be correct to do a report of a transaction. Remember, you would be reporting suspicious transactions regardless of who engaged in suspicious transactions. But even a step back, if the report discloses a violation, then that's where the immunity applies. And it doesn't matter whether the report is accurate or not. And that's what the Court said in style. It can be unfounded. It can be careless. It can even be malicious. The immunity applies because you filed a report of a possible violation. And as this Court said, that's actually an expansive phrase. It's meant to give the broadest possible immunity. Again, to be clear, it's only immunity from civil liability in a private party action. The government, it imposes no limitations on the government. If these reports are being filed with the government and somebody is filing them improperly, the government can always take action. What kind of action? What are the consequences for the filing of a fabricated, malicious, unfounded report? What happens to the reporter who does that? Under 31 U.S.C. 5322, it's a criminal violation. A violation of any regulation created by the Department of Treasury under Section 5318 becomes a violation under Section 5322. The government has, in fact, brought criminal prosecutions, admittedly, for at least a non-filing of a sort. I don't know if that were for a falsely reported SAR. Though I would also note that this process is, you know, the confidentiality of the process also means that the information is generally being provided to the government, and the government then is the initial first filter of what to do with the information and what investigation it wants to conduct. So could you, since we don't get to see these SARs, I mean, could you give me a little bit more information about what a report would look like? Would it say that the plaintiffs in this case engaged in the transaction which they actually engaged in? And would it also say something more fulsome about what the bank's activities were during that time frame? I can tell you, Your Honor, not speaking of whether, I can't even disclose whether or not there's a SAR in this case, but I can tell you what the SAR form says. So the Department of Treasury has created a form that parties, that broker-dealers and others will fill out and submit to the government. It requires identification of the transactions that are suspicious, and then there is a narrative section where somebody can explain essentially why are these suspicious. So it's not just identifying the transactions, but it's saying something about the transactions. Beyond that, it's really up to the government to determine what type of follow-up that they want to do. But there is some narrative explanation that's supposed to essentially say, let's identify certain transactions for you, now let's tell you why we have a concern about these transactions. I guess I'm also trying to figure out, does the bank self-report its own suspicious activity? Can a financial institution self-report it can? How often do they do it? That's a little bit trickier only because there's other mechanisms for disclosing. In other words, if a financial institution has already reported the conduct to its regulating agency, it would not actually have to file a SAR report. But I guess in theory they could file a SAR report as opposed to simply making a self-disclosure or their own report. But again, in this context, what we're talking about is this court's decision in Stout and what's the threshold for applying the immunity. Now Stout addresses essentially one prong of Section 5318, which is a possible violation of law. There's another prong to 5318 for immunity, which is also if you make any disclosure pursuant to a statute or regulation. And a SAR form, literally by definition, is a disclosure pursuant to a regulation. The SAR form only exists because of a regulation. And as a result, any disclosure through that mechanism is subject to immunity. And again, to be clear, the only immunity we're talking about is the immunity associated with filing the report. If a financial institution stole money from a client, if a financial institution disclosed their credit history to the public, they don't get any immunity for that. But if they filed a SAR report with the government, which is a confidential document, they would actually have immunity for any liability that allegedly flows from that, which could only mean any conduct of the government in investigating any allegation. Counselor, what meaning do you give to the language in Stout that says this? Since objectively there was a possible violation, it is hard to think that the bank could be found to have acted in bad faith. That case was disposed of on summary judgment. The court appears to be looking at a summary judgment record and then making that statement since objectively there was a possible violation. The appellants here seem to be asking for the same opportunity to develop a summary judgment record and then have the trial court determine whether there was or was not a possible violation. Why doesn't Stout support the approach that the appellant is arguing for here?  To start, of course, what the court is saying, the court has rejected the good faith, bad faith distinction in Stout. And then all they're simply saying is even if we had adopted a good faith distinction, we don't see how it would have helped the party here. So the court's not saying there needs to be discovery. The court's saying since objectively there's a possible violation, it's hard to think the bank could have been found to have acted in bad faith. But the court's just rejected any good faith or bad faith standards. What the court's saying is there is no qualifier. But you know what, even if there was a qualifier, you wouldn't win. Second, understand the posture of Stout. The Stout case was filed in the District of Puerto Rico in 1997. At that time, there was actually no Court of Appeals precedent on the interpretation of 5318 because the 11th Circuit's Lopez decision didn't come out until November of 1997. The court then allows discovery. Actually, there's no 5318 argument that's raised at the preliminary proceedings. On summary judgment, by the time summary judgment comes around, the Second Circuit has decided Lee v. Bankers Trust. And the District of Puerto Rico applies Lee v. Bankers Trust and says you're out. It doesn't get into any of the underlying facts. There's no analysis of declarations or anything of that nature. The District Court simply says here's what you've alleged, Mr. Stout. You lose in applying Lee. And then it comes up to this court, and obviously this court follows, you know, expressly follows Lee. So that there was a factual record created was solely because the District Court didn't have the benefit, obviously, of Stout or of Lee. Courts since Stout and Lee, including the court in the District of Puerto Rico, Quillis Rodriguez, I believe, v. United States, have applied it at a motionless stage because they have said, okay, this is something we can decide early on. Certainly here we also have that there's the express allegation, that there is a SAR file that identifies an alleged market manipulation. And as a result, there is no need for discovery. That's their very own allegation. As Your Honor noted, and we would emphasize, it essentially undermines the process of an immunity to say that you're going to have full-blown discovery and it's going to be a facts and circumstances kind of analysis. In fact, the court in Stout noted that. They noted that they rejected both a qualification of a requirement of objective reasonableness, as well as a requirement of subjective good faith. So they rejected both of them, in part because of the practical problems that that would create. That's at Stout at page 31. So you don't see possibility as a word of limitation in any sense at all. Is that your position? It does not qualify the immunity at all. It is just another way of saying that immunity is absolute. Is that your position? It broadens the immunity. The absolute is that there has to be a report of a possible violation. But within that confines, yes. It's a broadening of any liability. It would certainly distinguish something from, obviously, parties disclose things to the government all the time. Do you acknowledge that the violation reported could not possibly be a violation? It would, in fact, be impossible that on the facts reported that there was a violation? Do you acknowledge the impossibility? Certainly not. We didn't have to get into that battle before the district court, but there's a number of reasons that that's not true. Part of which is if you look at the actual document, they point to a memo. As Justice Souter correctly noted, they don't actually have a SAR. They acknowledge that they don't have any SAR. There's not even an acknowledgment of whether, in fact, a SAR was filed. But if you look at the memo, the memo that they point to, which is an internal memo, discusses, I'm sorry, I just wanted to note, it's at the record, 80 to 82, discusses an attempt at a short squeeze. As this court knows, even if you couldn't engage in a short squeeze, you can attempt to do so. That, in fact, is a violation of 15 U.S.C. Section 78J and 78I, which is the Exchange Act, Section 10 and Section 9 of the Exchange Act. So, you know, that I couldn't do something doesn't mean I can't attempt to do something, and that it still isn't a violation. So not even getting into the underlying facts. Then you can also get into the question of the underlying facts as well, but obviously the district court didn't do it. We're not asking the court to do it. That's a slightly separate issue. I do want to raise, though, in my limited time left, another point that Your Honor raised, and I think that it's significant, which is that the law is also very clear, I think it's also supported by this court's decision in Ray J.P. Morgan Chase Bank, that there can be no disclosure of the SAR, that the statutory and regulatory scheme don't allow a SAR to be disclosed, or even whether a SAR was filed or not, its existence to be disclosed. The consequence of that is that it makes no sense to impose liability when you can't actually have the underlying document. Indeed, Lee v. Bankers Trust, which is a Second Circuit opinion that this court expressly endorsed in Stout, makes that very note, that it would, the quote is, literally flies in the face of common sense to assert that Congress ought to impale financial institutions on the horns of such a dilemma. Those are not insurmountable problems. Courts routinely review documents on camera that can be sealing documents that should not be disclosed, so the suggestion that a defendant would be left defenseless because they can't try to defend themselves seems to be overstated when courts have techniques of dealing with that kind of confidentiality, don't they? Well, in this case, the regulation literally says that if you're asked for a SAR, you're supposed to not produce the SAR. I don't, I understand that there can be an Article 3 issue of how far can somebody push that, but the fact of the matter is at least the way the structure is set up, there's not even to the court supposed to be disclosed the existence of the SAR. And of course, Your Honor, to the extent the issue is somebody should know whether they were subject to a violation or not whether they're subject to this type of disclosure, even letting the court know that it's seen, what does the court do when the court then sees the SAR? Does the court tell the other side, trust me, if there was such a document, I might have possibly reviewed it and everything's okay? That doesn't seem to make sense either. So you could, in fact, disclose to the other side or to the public what the report was or what the subject matter of it was, which, again, contradicts the very idea of keeping these SARs confidential and not letting the public know about the possible investigations. Thank you for your time this morning, Your Honors. Thank you.